# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**SBA NETWORK SERVICES, LLC.,**

      **Plaintiff,**

**v.**                    //    CIVIL ACTION NO. 1:12CV164
                                    (Judge Keeley)

**TECTONIC ENGINEERING AND SURVEYING**
**CONSULTANTS, P.C.,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DKT. NO. 65]

Pending before the Court is the motion for summary judgment (dkt. no. 65), filed by the defendant, Tectonic Engineering and Surveying Consultants, P.C. ("Tectonic"). For the reasons that follow, the Court **DENIES** the motion.

### I. FACTUAL BACKGROUND

The plaintiff, SBA Network Services, LLC ("SBA"), owns and operates wireless communications infrastructure throughout the world. As part of its operations, SBA planned to erect a 300' telecommunications tower on top of a hill in Fairview, West Virginia. The design and construction of the tower site and the roadway leading up to it are in dispute.

In October 2009, SBA's Property Specialist, Nichole Arntz ("Arntz"), approached Tectonic's Vice President of Homeland Security and Public Safety Services, Edward Martella ("Martella"), to discuss the possibility of retaining Tectonic's professional

services. Although the parties dispute the exact scope of the services Tectonic was retained to perform,[1] they do agree that, at a minimum, Tectonic was responsible for designing the tower site and roadway. Notwithstanding the dispute that later arose regarding the scope of Tectonic's work, following negotiations between the two parties, SBA sent Tectonic a purchase order in November 2009.

SBA retained Andrew Systems, Inc. ("Andrew")[2] to construct the tower site and roadway designed by Tectonic. After Andrew completed construction, however, SBA observed stress fractures and earth movement at the tower site and along the roadway. Following further investigation, SBA decided to construct a new roadway, rather than to repair the existing one.

On October 23, 2012, SBA filed a complaint in this Court, alleging professional negligence, breach of contract, and breach of

---

[1] According to Martella's affidavit, Tectonic originally was "to provide environmental evaluations and surveys for the site," and was not asked to provide construction drawings until after gas pipelines were found on the site. (Dkt. No. 65-1 at 1). According to Arntz's affidavit, Tectonic was "to perform site surveys and to develop and design a site plan for the construction of [the] tower site." (Dkt. No. 67-5 at 2).

[2] Originally, Andrew was a defendant, cross-claimant, and cross-defendant. However, on July 30, 2014, the parties agreed to dismiss Andrew from the case.

warranty against Tectonic. It claimed damages in excess of $400,000.

Tectonic moved for summary judgment on May 23, 2014, asserting that there are no material issues of fact in dispute because (1) SBA lacks competent expert testimony supporting its professional negligence claim against Tectonic, and (2) SBA did not follow Tectonic's design. In its response, SBA argues that (1) its expert's testimony supports a prima facie case of professional negligence against Tectonic, and (2) there are material facts in dispute regarding the cause of SBA's damages.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials" show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a), (c)(1)(A). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining

the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

### III. DISCUSSION

Tectonic contends that, as a matter of law, the testimony of SBA's expert, Mark F. Altrogge ("Altrogge"), does not support a claim for professional negligence. It further asserts that there is no dispute that SBA and Andrew failed to follow Tectonic's design, and it is that failure, not its design, that led to the earth movement at issue in this case. For its part, SBA disputes

4

those arguments and urges that any deviations from Tectonic's design were immaterial and not the cause of the earth movement.

Under West Virginia law, the general rule is that "want of professional skill can be proved only by expert witnesses."[3] Syl. Pt. 3, Totten v. Adongay, 337 S.E.2d 2 (W. Va. 1985) (quoting Syl. Pt. 2, Howell v. Biggart, 152 S.E. 323 (1930)). In his report, Altrogge, SBA's expert, opined as follows:

> Based upon the review of the plans and documentation provided it is with a reasonable degree of engineering certainty that:
>
> • the lack of adequate stormwater conveyance facilities;
>
> • lack of soil erosion control measures;
>
> • limits of grading based upon as-built conditions are less than the proposed limits as shown on the design drawings that indicate some of the cut and fill slopes have been constructed "steeper" than designed; and
>
> • no documentation confirming that the roadway was compacted to the specifications provided on the construction drawings
>
> caused the slope failures at the compound site and/or roadway.

---

[3] Although West Virginia also recognizes the "common knowledge" exception to the expert testimony requirement, see Totten v. Adongay, 337 S.E.2d 2, 6 (W. Va. 1985), that exception is inapplicable to this case, which involves construction and engineering related matters that are beyond the common knowledge of a lay juror.

**SBA NETWORK SERVICES v. TECTONIC ENGINEERING AND
SURVEYING CONSULTANTS, P.C.
1:12CV164**

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

(Dkt. No. 67-2 at 2). Notably, in its briefing, Tectonic admits that "the first two bullet points reference the design." (Dkt. No. 65 at 9). Thus, its argument that this case should not proceed to trial due to lack of expert testimony is unpersuasive.

According to Tectonic, "it is undisputed that [SBA] and/or [Andrew] chose not to follow designs in the plan specifically related to the materials used in the construction of the road, compaction of the road, and precautionary measures which were in the plan to assist in the prevention of earth movement." (Dkt. No. 65 at 10). The four design features at issue are the fabric under the roadway, the type of stone used in the fill, the compaction of the soil, and the storm water protection plan.

SBA admits that "weed fabric was not used underneath the entire roadway and that, during the construction phase, SBA and the contractor substituted a locally available type of rock for the road for the type that was specified on the design drawings." (Dkt. No. 67 at 6). Nevertheless, it argues that, while "these may be deviations from Tectonic's designs," it is "unclear whether these deviations caused the failure of the slopes and road." Id. at 7.

**SBA NETWORK SERVICES v. TECTONIC ENGINEERING AND
SURVEYING CONSULTANTS, P.C.
1:12CV164**

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

SBA relies on a decision by the Supreme Court of Ohio, Cincinnati Riverfront Coliseum, Inc. v. McNulty, Co., 504 N.E.2d 415, 419 (Ohio 1986), asserting it stands for the proposition that "[a] contractor's deviations from the plans and specifications submitted by a structural engineer or architect should be regarded as material only if they serve independently to break the causal connection between the design and the plaintiff's damages by completely removing the effects of any negligence on the part of the structural engineer or architect in preparing the design." Careful review of that case supports SBA's argument.

In McNulty, the structural engineer responsible for designing a walkway that subsequently deteriorated was found to be partially liable for negligent design, and the trial court denied the engineer's motion for judgment notwithstanding the verdict or for a new trial. Id. at 417. On appeal, the intermediate court of appeals reversed the judgment against the engineer and ordered a new trial. Id. On further appeal to the Supreme Court of Ohio, the engineer argued that the lower appeals court should have reversed on an additional ground, that as a matter of law, the engineer could not be liable because the construction of the walkway materially deviated from its design plans. Id. at 419.

7

Applying the above rule, the Supreme Court rejected the engineer's argument, finding "evidence to negate the effect of the deviations." Id. For instance, the engineer "did not consider the effect of exposure to weather or the ability to disperse surface water when it designed the walkway." Id.

Here, Tectonic has satisfied its initial burden on summary judgment by pointing to evidence linking the deviations from its design to the alleged instability of the tower site and roadway. For example, SBA's Construction Manager, Dennis Manko, testified at his deposition as follows:

> Q. And [the fabric] wasn't placed under the entire access drive; was it?
>
> A. I don't think it was. No.
>
> Q. Okay. Are you aware that the weed control fabric affects the stability of the road?
>
> . . .
>
> A. Yes.
>
> Q. You were aware of that?
>
> A. Yes.
>
> Q. Okay. How did you become aware of that?
>
> A. As far as the -- can you repeat that again?

> Q. Yeah. You said that you were aware that weed control fabric affects the stability of the road. How are you -- how did you become aware of that?
>
> A. It's just through past experience and the use of it on many jobs and different areas.
>
> Q. And you used the fabric to make the road more stable; is that right?
>
> A. Yes.
>
> Q. And the engineers called for fabric on this entire road; didn't they?
>
> . . .
>
> A. Yeah.
>
> Q. So it's called for in the drawings on the entire access road; isn't it?
>
> A. Yes.
>
> Q. And it wasn't done; was it?
>
> A. No.
>
> Q. So that's not in accordance with the drawings, either; was it?
>
> A. No.

(Dkt. No. 65-1 at 29).

Regarding the inadequate compaction, Tectonic's expert, Matthew E. Meyer, offered the following opinion:

> A slope should be properly constructed to provide a stable condition. <u>We understand from the deposition testimony provided that no compaction testing of the fill</u>

9

> material was accomplished and no engineering firm was engaged to provide quality control or testing services of the soils during construction. Criteria for minimum compaction levels were provided in the project drawings and in the geotechnical report. The lack of construction phase quality control and testing is atypical for projects in West Virginia considering the critical nature of constructing foundations supporting a 300-ft-tall communications tower, re-grading of the tower pad area and an access roadway, which required re-grading (i.e., cuts and fills) of an existing hillside.

(Dkt. No. 59-1 at 6) (emphasis added).

With respect to SBA's decision to use a type of stone other than that incorporated into Tectonic's design, SBA's Project Manager, Shawn McCoy, admitted that, despite making that decision, "I don't have the knowledge or the experience to understand the fact that stone is part of the road." (Dkt. No. 65-1 at 12).

In its response to Tectonic's motion, SBA does not point to evidence directly contradicting the causative link between its deviations and the earth movement. Rather, it seeks to negate the materiality of any deviations, and shift the bulk of culpability back onto Tectonic by arguing that the primary cause of its damages was Tectonic's failure to include a storm water protection plan in its design.

**SBA NETWORK SERVICES v. TECTONIC ENGINEERING AND
SURVEYING CONSULTANTS, P.C.
1:12CV164**

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

While Tectonic concedes that it "did not design a storm water drainage plan for the tower site,"[4] (dkt. no. 65 at 11), it contends that the relevant question is whether, prior to the design, SBA had directed Tectonic not to incorporate the storm water protection plan against Tectonic's advice. The evidence as to this issue is hotly disputed.

A week before Tectonic filed the instant motion, its representative, Martella, signed an affidavit, swearing he advised Arntz of the need for a storm water protection plan, but she told him they would "worry about that later." (Dkt. No. 67-6 at 1-2). On the day SBA filed its response brief, Arntz also signed an affidavit, swearing "I did not have a discussion with Tectonic regarding storm water management nor did anyone from Tectonic raise that as an issue with me." (Dkt. No. 67-5 at 2). She further stated, "I did not refuse to allow Tectonic to design a roadway that could withstand storm water runoff." Id.

At the summary judgment stage, courts should avoid making credibility determinations, which are left to the discretion of the

---

[4] Furthermore, according to Andrew's expert, Patrick E. Gallagher, "it can be reasonably concluded that the roadway and pad failures are a result of the improper design details relative to drainage, erosion, and slope stability." (Dkt. No. 67-3 at 2-3).

11

fact-finder. See Watson v. Brown, 446 Fed. App'x 643, 645 (4th Cir. 2011). Therefore, it would be error to make a dispositive credibility determination here on the basis of the parties' competing affidavits.

## IV. CONCLUSION

Based on the evidence discussed, summary judgment is clearly unwarranted. Significant questions of material fact exist regarding the scope of Tectonic's work, whether Tectonic breached its professional duty by failing to include a storm water protection plan in its design, and, with regard to the professional negligence claim, whether SBA materially deviated from Tectonic's design. Because the resolution of these and other factual issues is properly reserved for the fact-finder at trial, the Court **DENIES** Tectonic's motion for summary judgment.

It is so **ORDERED**.

The Court directs the Clerk to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: August 1, 2014.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE